**The STATE of Ohio, Appellee,**

**v.**

**YARBROUGH, Appellant.**

[Cite as *State v. Yarbrough* (1998), 129 Ohio App.3d 437.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73167.

Decided Aug. 17, 1998.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Mark J. Mahoney*, Assistant Prosecuting Attorney, for appellee.

*Raymond S. Ling*, for appellant.

O'DONNELL, Judge.

Nelson Yarbrough appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of one count of burglary and one count of theft, alleging prejudice from admission of a photo array at trial, and further alleging that his convictions are against the manifest weight of the evidence and that the court improperly sentenced him on his burglary conviction. For the reasons which follow, we reverse the judgment of the trial court, and remand the cause for a new trial.

This case arises out of an incident which occurred around noon on April. 12, 1997, in the executive offices of the Dillard's department store located at Randall Park Mall in North Randall, Ohio. On that day, James Love, a stock room employee, saw a light-skinned black man leave cosmetics manager Richard Richter's office and inquired of him what business he had in that area of the store. The individual responded that he worked there and had come back looking for a co-worker. Shortly thereafter, Clifford Phoenix, an assistant manager at the store, saw the same individual in the hallway. This individual told Phoenix that he had come back to obtain an employment application. Love and Phoenix then walked the man through the training room to the personnel office, and when they turned away, he disappeared.

Following lunch, Richter returned to his office and discovered that his briefcase had been moved and his portable CD player was missing; several days later, he also discovered that his cellular phone had been taken as well.

Phoenix then notified David Hrouda, a North Randall Police detective who worked store security, about the incident and described the individual as a light-skinned black male about five foot ten, weighing one hundred ninety pounds. Hrouda immediately thought of Yarbrough and obtained a mug shot photo of him showing him with a police identification number hanging from a placard around his neck, from the North Randall Police Department, which he incorporated into a six-person photo array. Yarbrough was the only individual depicted in this manner.

On April 16, 1997, Hrouda presented the photo array to both Love and Phoenix, and each identified Yarbrough as the individual he had seen in the executive office area at Dillard's. Thereafter, Hrouda questioned Yarbrough about the incident, and Yarbrough admitted that he had been at Dillard's that day, but stated that he only peeked into the offices and did not steal anything. He further claimed that Allen Simmons stole the items.

Hrouda then arranged a second photo array, containing the photo of Allen Simmons depicted in the same fashion as Yarbrough. He then returned to Dillard's, showed both Phoenix and Love the photo array containing the photo of Allen Simmons, but neither identified him. Hrouda subsequently arrested Yarbrough, and the grand jury returned indictments against him for burglary and theft.

At trial, the state presented testimony from Richter, Phoenix, Love, and Detective Hrouda, and offered into evidence photographs of the executive office area at Dillard's, as well as the photo array used to identify Yarbrough. The defense presented no testimony during its case in chief. Following charge and deliberation, the jury returned verdicts finding Yarbrough guilty of burglary and theft, and the court imposed sentence.

Yarbrough now appeals and raises five assignments of error, the first of which states as follows:

I

"The trial court erred by admitting into evidence the photo array containing a mug shot of appellant with a police department nameplate and identification numbers visible on the photo."

Yarbrough argues that the court erred in admitting the photo array into evidence and allowing witnesses to testify to their pretrial identification of him

based on the photo array because his photo impermissibly suggested to the jury that he had engaged in prior criminal activities.

The state contends that the court did not err in admitting the photo array into evidence because Yarbrough first brought attention to the fact that his photo contained police identification numbers.

The issue before us, then, is whether the court erred in admitting the photo array and testimony by the state's witnesses regarding their pretrial identification of Yarbrough.

In *State v. Breedlove* (1971), 26 Ohio St.2d 178, 55 O.O.2d 441, 271 N.E.2d 238, the court stated in its syllabus:

"1.   Under R.C. 2945.55, where identification of the defendant is in issue, a witness who on previous occasion has selected * * * defendant's photograph from a number of photographs, may testify to such previous photographic identification if the photographs, or the photographs coupled with other testimony given on direct examination, do not provide the finder of facts with the reasonable inference that defendant has had prior criminal involvement, and if the procedure of identification does not violate defendant's constitutional rights.

"2.   On direct examination, evidence of the identification of the defendant from a selection of photographs, using photographs from police files with police identification numerals thereon which provide the finder of facts with the reasonable inference that defendant has had prior criminal involvement, may not be used for the purpose of proving defendant's identity."

In this case, Yarbrough's picture in the photo array depicted him with a police name plate and police identification number.   None of the other individuals were shown in this fashion.   The photo array, when coupled with the trial testimony of Detective Hrouda that he specifically chose to include Yarbrough's photo based on prior contacts with him, suggested to the jury that Yarbrough had prior criminal involvement.   Thus, the method of identification used in this case on direct examination at trial constitutes reversible error.   In conformity with the decision in *State v. Breedlove, supra,* we reverse the judgment of the trial court and remand the case for a new trial.

*Judgment reversed*
*and cause remanded.*

PATRICIA ANN BLACKMON, A.J., and DYKE, J., concur.